IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA )
)
v. )
) Case No. 1:19-mj-188
GEORGIY SERYOGIN, )
   a/k/a "George Seryogin" )
)
   Defendant. )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Jeffrey Fuller, Special Agent with the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND BACKGROUND

1. I submit this affidavit in support of a criminal complaint and arrest warrant charging GEORGIY SERYOGIN, a/k/a "George Seryogin," who did knowingly and intentionally engage in sexual contact with "Jane Doe" without her permission on or about July 27, 2018, while aboard nonstop United Airlines Flight 804 from Tokyo, Japan to Washington Dulles International Airport, Dulles, Virginia, an aircraft in flight within the special aircraft jurisdiction of the United States, in violation of Title 18, United States Code, Section 2244(b) and Title 49, United States Code, Section 46506(1), to wit: GEORGIY SERYOGIN intentionally touched the inner thigh and vagina of "Jane Doe," through her clothing and without her permission, with an intent to abuse, humiliate, harass, and degrade "Jane Doe," and to arouse and gratify the sexual desire of any person.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") in the Washington Field Office. I have been employed with the FBI for more than fourteen years, and I

1

have received training from the FBI, including training in general law enforcement. Since May 2016, I have been assigned to the Washington Dulles International Airport office of the FBI, where I investigate violations of federal law which occur within the airport environment and onboard aircraft. As part of my duties, I investigate crimes that occur within the special aircraft jurisdiction of the United States and the special maritime and territorial jurisdiction of the United States.

3. I gathered the following facts in support of a criminal complaint and arrest warrant during the course of my investigation and through speaking with other individuals, including "Jane Doe," the 19-year-old female victim in this case (hereinafter, "the Victim"). When I assert that a statement was made by an individual, that statement may be described in substance and in part, but my assertion is not necessarily intended to constitute a verbatim recitation of the entire statement. Because of the affidavit's limited purpose, I have included facts sufficient to support probable cause, but I have not included every fact discovered during the investigation or known to the government.

## RELEVANT STATUTORY PROVISIONS

4. Title 49, United States Code, Section 46506, provides in relevant part that any individual "on an aircraft in the special aircraft jurisdiction of the United States who commits an act that—(1) if committed in the special maritime and territorial jurisdiction of the United States (as defined in section 7 of title 18) would violate . . . chapter 109A of title 18, shall be fined under title 18, imprisoned under that section or chapter, or both."

5. Title 49, United States Code, Section 46501(2)(A) provides that the "special aircraft jurisdiction of the United States" includes "a civil aircraft of the United States" that is an "aircraft in flight." Title 49, United States Code, Section 46501(1) states in relevant part that the

term "aircraft in flight" includes "an aircraft from the moment all external doors are closed following boarding—(A) through the moment when one external door is opened to allow passengers to leave the aircraft." Additionally, Title 49, United States Code, Section 46501(2)(D)(i) provides that the "special aircraft jurisdiction of the United States" includes an aircraft outside the United States "that has its next scheduled destination or last place of departure in the United States, if the aircraft next lands in the United States."

6. Title 18, United States Code, Section 2244(b), which falls under chapter 109A of Title 18, provides in relevant part "[w]hoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in sexual contact with another person without that other person's permission shall be fined under this title, imprisoned not more than two years, or both."

7. Title 18, United States Code, Section 2246(3) defines the term "sexual contact," as used in chapter 109A of Title 18, to mean "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

## PROBABLE CAUSE

8. On or about July 27, 2018, the 19-year-old Victim was a passenger on United Airlines Flight 804 (hereinafter, "the Flight"), a nonstop civil aircraft which departed from Narita International Airport in Tokyo, Japan and arrived at Washington Dulles International Airport in Dulles, Virginia, which is located within the Eastern District of Virginia. Upon information and belief, United Airlines is incorporated, registered, and headquartered in the United States.

9. Defendant GEORGIY SERYOGIN, a dual national of Russia and the United States, is a resident of the Commonwealth of Massachusetts. Defendant SERYOGIN, who was

3

46-years-old at the time he committed the abusive sexual contact described in this affidavit, was a passenger on the Flight. Defendant SERYOGIN occupied 26A, a window seat on the aircraft.

10. The Victim occupied 26B, a middle seat on the aircraft located directly next to 26A. The Victim had never met or spoken to Defendant SERYOGIN prior to sitting next to him on the Flight. Business records provided by United Airlines confirmed the seating assignments of the Victim and Defendant SERYOGIN.

11. Another passenger sat in 26C (hereinafter, "Passenger-1"), the aisle seat on the aircraft in the same row as the Victim and Defendant SERYOGIN. Passenger-1 traveled aboard the aircraft with a cat that was in a soft carrier on the passenger's lap during the Flight. Passenger-1 reported to me that she slept for a while on the Flight.

12. All three individuals – Passenger-1, the Victim, and Defendant SERYOGIN – said hello to each other and engaged in brief conversation while they were settling into their seats. For example, the Victim told Defendant SERYOGIN about her trip to Southeast Asia, and Defendant SERYOGIN told the Victim that he was traveling to Boston.

13. While the aircraft was in flight over the high seas, the Victim, who had been sleeping, woke up when Defendant SERYOGIN reached across the Victim's body to pet the cat that was in the carrier in seat 26C. Passenger-1 (the cat's owner) appeared to have previously left her seat to go to the restroom. At this point, the Victim noticed that the armrest dividing her seat and Defendant SERYOGIN's seat was in a raised position. Based on my training and experience, individuals who commit sexual assaults aboard aircrafts often begin their sex crimes by slowly making physical contact with their victims in order to test them and observe their reactions, if any.

14. Approximately 10 to 15 minutes later, the Victim felt Defendant SERYOGIN rubbing her knee, without her permission. A few minutes later, Defendant SERYOGIN put his hand against the Victim's vagina, through her clothing and without her permission, and began to caress her vagina, while using his other hand to try to spread her legs apart. The Victim's face was turned away from Defendant SERYOGIN, with her head down, as he sexually assaulted her. The Victim was also quietly crying, with tears streaming down her face. The Victim then pushed Defendant SERYOGIN's hands off her. Prior to sexually abusing the Victim, Defendant SERYOGIN had lifted his armrest and positioned his blanket to partially cover one of the Victim's legs, making it difficult for other passengers on the Flight to observe his actions. According to the Victim, Passenger-1 appeared to have been sleeping, or at the very least, looking straight ahead at the screen on the seat positioned in front of her. The Victim, however, clearly saw Defendant SERYOGIN commit the abusive sexual contact described in this affidavit.

15. Following Defendant SERYOGIN's sexual assault on her, the Victim froze in fear, feeling upset and confused, and did not know what to do or how to get away from him. The Victim waited for a few minutes following the sexual assault and left her seat to use the restroom after Defendant SERYOGIN appeared to fall asleep. The Victim then quickly approached a flight attendant to report Defendant SERYOGIN's sexual assault on her.

16. The Victim first reported Defendant SERYOGIN's sexual assault on her to a United Airlines flight attendant (hereinafter, "Airline Employee-1") who was working on the Flight. Airline Employee-1 reported to me that while airborne, the Victim, who appeared to be a young woman waiting near the rest room on the Flight, motioned for Airline Employee-1 to come toward her. Airline Employee-1 observed that the Victim was visibly shaken. The Victim

asked Airline Employee-1 if she could move to another seat and explained that the man seated next to her had his hands on her.

17. At this point, Airline Employee-1 observed the Victim motion toward her vagina area. Based on my training and experience, victims of sexual assault and similar crimes sometimes have difficulty saying, in words, the exact parts of themselves that were touched. Gestures and demonstrations are a more comfortable method of explaining unwanted and frightening contact.

18. After the Victim recounted Defendant SERYOGIN's abusive sexual contact on her, Airline Employee-1 brought the Victim to the galley of the aircraft and asked her to describe what transpired to another flight attendant (hereinafter, "Airline Employee-2"). The Victim told Airline Employee-2 that Defendant SERYOGIN did not accidentally touch her while he was getting out of his seat. The Victim reported that he had his hands on her, and indicated between her legs. The Victim stated that she froze and did not know what to do. The Victim then reported the incident to a third flight attendant (hereinafter, "Airline Employee-3"), who learned from the Victim that she was afraid to return to her seat due to Defendant SERYOGIN's sexual assault on her. Airline Employee-3 then moved the Victim to another seat on the aircraft.

19. I interviewed the Victim on multiple occasions, including shortly after the Flight landed at Washington Dulles International Airport. The Victim's statements during these interviews have been consistent. The Victim had not consumed any alcohol or any substances that would have impaired her ability to perceive and recall the events surrounding the sexual assault she suffered because of Defendant SERYOGIN's abusive conduct. The Victim remembered that Defendant SERYOGIN had an accent and ordered a drink on the Flight.

6

20. The Victim told me that, before she spoke to the Flight crew, she was scared and uncomfortable at the prospect of describing what Defendant SERYOGIN had done to her. Given her fear, the Victim was also afraid of confronting Defendant SERYOGIN. As a result, the Victim typed a note on her phone within minutes of Defendant SERYOGIN's abusive sexual contact, which she intended to show to a flight attendant while airborne. Although the Victim worked up the courage to tell the Flight crew about the sexual assault, the note remained on her phone. I obtained an electronic copy of the note, which is dated July 27, 2018, and states in part, "the man next to me was touching me in inappropriate places while i was asleep."

21. After the Flight landed at Washington Dulles International Airport, the Victim quickly described the incident to her cousin via text messages. The Victim has provided me with copies of this July 27, 2018 conversation. In these messages, the Victim explained to her cousin, in relevant part, that "this guy was touching me on the plane while i was asleep." When her cousin asked how she knew that the man was sexually assaulting her, the Victim clarified that she was "half asleep." The Victim specifically wrote that Defendant SERYOGIN touched her "knee[,] thigh[,], [and] vag" and also stated that she was wearing "torn jeans so he had ez access to my legs." The Victim's text messages to her cousin also corroborated the fact that she "pushed his [Defendant SERYOGIN's] arms off" her and that she "waited for him to sleep," at which point she "told a flight attendant and asked to be moved."

22. The Victim also described the sexual assault to a friend via an electronic messaging application on July 27, 2018 after the Flight landed. The Victim has provided me with copies of this conversation. In these messages, the Victim stated that Defendant SERYOGIN rubbed her vagina outside her pants and was "groping me there." She also explained "i like froze i was in shock and like i said i was scared to confront him . . . ."

7

23. After Defendant SERYOGIN disembarked the plane, he was interviewed by your affiant and another FBI Special Agent. Defendant SERYOGIN, who stated that he reads and speaks English fluently, was apprised of his *Miranda* rights orally and in writing, acknowledged understanding his rights orally and in writing, and voluntarily agreed to waive those rights, again orally and in writing.

24. During the *Mirandized* interview, Defendant SERYOGIN stated that he was seated in 26A on the aircraft next to a young woman who occupied the middle seat. Defendant SERYOGIN stated that he helped this young woman place her luggage in the overhead compartment and engaged in "small talk" with her for a short period of time. Defendant SERYOGIN stated that the woman who occupied the aisle seat in his row was traveling with a cat, which became a topic of conversation between him and the two women.

25. Defendant SERYOGIN stated that he drank approximately one glass of wine with his first meal on the Flight and had approximately two glasses of rum with his subsequent meals while airborne. Defendant SERYOGIN stated that he was not "drunk" and denied being under the influence of any medications, such as sleeping pills, during the Flight. Defendant SERYOGIN recounted details concerning his activities on the Flight, such as the names of movies he watched. He claimed that he fell asleep approximately four to five hours into the Flight.

26. During the interview, Defendant SERYOGIN admitted that he raised the armrest between him and the Victim. Defendant SERYOGIN further admitted that he spread out a blanket after he raised the armrest, and before he alleged to have fallen asleep. Although Defendant SERYOGIN claimed that he had no recollection of touching the Victim, he admitted that it could have been possible because he does move around while sleeping. The Victim is

8

confident, without any doubt, that Defendant SERYOGIN was awake when he sexually assaulted her, and distinctly remembers that she quickly looked at him when she pushed his hands off her inner thigh and vagina areas. At that point, the Victim stated that Defendant SERYOGIN appeared to have a look of regret on his face, knowing what he did to her.

## CONCLUSION

27. Based on the facts set forth above, I submit that this affidavit supports probable cause for a criminal complaint and arrest warrant for GEORGIY SERYOGIN, a/k/a "George Seryogin," who on or about July 27, 2018, while aboard nonstop United Airlines Flight 804 from Tokyo, Japan to Washington Dulles International Airport, an aircraft in flight within the special aircraft jurisdiction of the United States, did knowingly and intentionally engage in sexual contact with the Victim without her permission, to wit: GEORGIY SERYOGIN intentionally touched the inner thigh and vagina of the Victim, through her clothing and without her permission, with an intent to abuse, humiliate, harass, and degrade the Victim, and to arouse and gratify the sexual desire of any person.

Jeffrey Fuller
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 23rd day of April, 2019.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

Honorable Theresa Carroll Buchanan
United States Magistrate Judge
Alexandria, Virginia

9